UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID KURZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY; and FMR CO., INC.,<br><br>Defendants. | Case No. 07-592-WDS<br><br>CLASS ACTION SOUGHT |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff David Kurz, on behalf of himself and all others similarly situated, brings this class action against Fidelity Management & Research Company ("Fidelity"), and FMR Co., Inc. ("FMR"), (collectively "Defendants") for breach of contract.

### I. JURISDICTION AND VENUE

1.  This is a class action for breach of contract where the amount in controversy, as defined by 28 U.S.C. § 1332 (d)(6), exceeds $5,000,000 (five million dollars), exclusive of interest and costs. In addition, this Court has original jurisdiction, based on diversity of citizenship, pursuant to 28 U.S.C. §1332(d)(2)(a), as one member of the class of Plaintiffs is a citizen of a state different from any Defendant.  <u>Plaintiff is a citizen of the State of Illinois, and Defendants are citizens of the State of Massachusetts.  Fidelity, and FMR, are both incorporated in the Commonwealth of Massachusetts, and maintain the same principal place of business in Boston, Massachusetts.</u>

2.  This judicial district is the proper venue pursuant to 28 U.S.C. §§ 1391(a)(2) and (3). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district

and the Defendants are subject to personal jurisdiction in this district. More specifically, (1) Plaintiff resides in Trenton, Illinois; (2) Plaintiff received his Fidelity account statements in Trenton, Illinois; (3) Plaintiff sent correspondence to Fidelity from Trenton, Illinois, and (4) Plaintiff called Fidelity with questions regarding his Fidelity accounts from Trenton, Illinois. Trenton, Illinois lies within the territorial jurisdiction of the United States District Court of Southern Illinois.

3. Additionally, Fidelity conducts substantial business in Illinois, including, but not limited to, (1) operating five Investor Centers in Illinois; (2) hosting seminars for its Illinois customers throughout Illinois; (3) acting as investment manager for the State Universities Retirement System of Illinois; (4) acting as a 403(b) approved vendor for the University of Illinois; (5) acting as a 403(b) approved vendor for the Northern Illinois University; and (6) contributing to political organizations in Illinois. Through these business conducts, Fidelity has sufficient minimum contacts with the State of Illinois such that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice.

## II. THE PARTIES

4. Plaintiff is a former client of Fidelity, a registered investment advisor, in investment portfolios created, managed, and advised by Fidelity and FMR. Plaintiff is an individual and at all times pertinent, was a citizen of the state of Illinois.

5. Fidelity and FMR are registered investment advisers (or affiliated persons of investment advisers). <u>Fidelity, and FMR, are both incorporated in the Commonwealth of Massachusetts, and maintain the same principal place of business in Boston, Massachusetts.</u> They create, manage, and advise a number of investment portfolios, including the portfolios invested in

2

by Plaintiff. At all times relevant to this Complaint, Fidelity and FMR were authorized to do business, and were doing business in the state of Illinois.

6. All conditions precedent to the filing of this action have been performed, excused, or waived.

### III. THE OBLIGATION OF BEST EXECUTION

7. In managing portfolios, investment advisors, like Fidelity and FMR, have a duty to decide whether, in what amounts, and most pertinent, through which securities' brokers, to purchase or sell securities. Commissions and other execution costs paid by clients for the execution of these securities transactions can easily run into the tens of millions of dollars or more per year.

8. Concern over the execution costs of securities transactions (including the cost of market impact when using less than best execution) is not a trivial matter. Differences of even a few cents per share can quickly build to significant amounts when considering that advisers often trade in blocks of tens or hundreds of thousands of shares per transaction and may enter into a significant number of transactions each year.

9. As discussed below, given concerns regarding the cost of securities trading, transaction confirmations with executing brokers contain a "best execution" obligation. This obligation, forming a binding contract enforceable by Plaintiff and the Plaintiff class, required Fidelity and FMR to choose execution brokers on the basis of the most favorable practicable execution costs, taking into consideration the size of each transaction, the number of transactions per year, the market impact of the transaction, brokerage commissions, services provided by the broker, and other considerations. In this case, Fidelity and FMR had an obligation to fairly decide whether,

in what amounts, and with what execution broker to enter into transactions in securities on behalf of their investors, like Plaintiff, but had an absolute duty to obtain "best execution."

10. Unfortunately, as described further below, Fidelity and FMR breached their "best execution" obligations.

### IV. THE AGREEMENTS

11. Fidelity and FMR's securities transactions on behalf of their investors (like Plaintiff and the Plaintiff class), are confirmed by the executing brokers with standard forms of confirmation agreements (the "Agreements") that incorporate the rules of the self-regulatory agencies charged with regulating Fidelity, FMR, and the executing brokers.

12. Among the rules of the self-regulatory agencies charged with regulating Fidelity, FMR, and the executing brokers that are incorporated by reference in, and are a material provision of, the Agreements, is a requirement that Fidelity, FMR, and their executing brokers achieve "best execution" in entering into transactions on behalf of investors like Plaintiff and the Plaintiff class. A copy of the relevant NASD Rule and NYSE InformationMemo are attached as **Exhibits A** and **B**, respectively.

13. The Agreements constitute binding contracts between Fidelity and FMR on the one hand, and the executing broker on the other hand. The Agreements are standardized by industry practice and the rules of the self-regulatory agencies and are in all material respects substantially identical regardless of the transaction entered, the securities involved, the identity of the executing broker, or the investment portfolios on whose behalf Fidelity and FMR are acting.

14. In entering into the Agreements, Fidelity, FMR, and the executing brokers each had the intention that the Agreements protect and benefit Fidelity's and FMR's investors like Plaintiff

and the Plaintiff class. In deciding to invest in portfolios managed by Fidelity and FMR, investors like Plaintiff and the Plaintiff class rely upon contractual and industry duties designed to protect their interests including the obligation of "best execution."

15. Accordingly, the investors like Plaintiff and the Plaintiff class, are intended third-party beneficiaries to the Agreements and are entitled to sue for breaches of the provisions of the Agreements.

### V. THE JEFFRIES SCANDAL: STRIPPERS, BRIBES AND DWARF TOSSING

16. There are any number of securities brokers from which Fidelity and FMR could choose to execute transactions so long as they achieved "best execution."

17. Unfortunately, Fidelity and FMR were not guided by their "best execution" obligations. Rather, they became embroiled in a tawdry bribery scheme in which transactions were steered to brokers not on the basis of best execution but, instead, on the amount and number of unlawful "goodies" that the brokerage firms lavished on Fidelity and FMR securities' traders.

18. Between May 2002 and October 2004, Fidelity and FMR retained Jeffries & Co. ("Jeffries") as an executing broker in transactions made by Fidelity and FMR on behalf of investors like Plaintiff and the Plaintiff class. These transactions were confirmed by Jeffries in Agreements as those described above. Fidelity, FMR and Jeffries each had the intention that the Agreements protect and benefit Fidelity and FMR's investors like Plaintiff and the Plaintiff class. Pursuant to the Agreements, Fidelity, FMR and Jeffries had a contractual "best execution" obligation regarding transactions entered into by Fidelity and FMR on behalf of investors like Plaintiff and the Plaintiff class, for which Fidelity and FMR used Jeffries as the execution broker.

5

19.  However, between 2002 and 2004, Jeffries lavished a number of "gifts" on Fidelity and FMR traders, including:

- $47,000 to fly one trader and his wife to St. Thomas, U.S. Virgin Islands;

- $70,000 to fly another trader to Los Angles for his honeymoon;

- $75,000, including limousine service, to fly two traders to a Miami bachelor party that included dwarf-tossing and ogling strippers;

- $225,000 for a four-day, three-person golf excursion to Las Vegas and Cabo San Lucas, including private plane flights and luxury hotel accommodations;

- $125,000 for a Super Bowl weekend for two;

- at least $334,000 for various private plane flights, mostly for weekend trips and vacations by traders; and

- $90,000 for tickets to the Wimbledon tennis tournament for one trader over three years.

20.  It is little wonder that Jeffries' revenue from Fidelity and FMR for transactions executed on behalf of investors like Plaintiff and the Plaintiff class, ballooned from $1.7 million during the first six months of 2002 up to $24.5 million in business by September 2004.

21.  Defendants knew that the practice of accepting such "gifts" in exchange for transaction execution business was improper and unlawful and contrary to their "best execution" obligations. Nonetheless, they knowingly entered into a common course of conduct whereby Fidelity and FMR directed securities transaction business to Jeffries based on payments and gifts to Fidelity and FMR traders, in breach and total disregard of their "best execution" obligations. At all times relevant, however, Plaintiff and the Plaintiff class were unaware of Defendants' wrongful conduct.

22.  Defendants' wrongful conduct resulted in higher execution costs than would have been realized but for the breaches of their "best execution" obligations. In turn, these higher costs

6

were ultimately borne by Fidelity and FMR investors, like Plaintiff and the Plaintiff class, causing them damage.

23. Acknowledging this breach of duty, on December 21, 2006, E.C. Johnson 3d, the Chairman of the Fidelity Board of Trustees, issued an open letter to the Fidelity shareholders, explaining that Fidelity had agreed to pay the Fidelity mutual funds (to the benefit of the funds' current shareholders) $42 million plus interest to redress its "misconduct." A copy of the December 21, 2006 letter is attached as **Exhibit C**. The letter made no mention of compensation to the Fidelity mutual funds' former shareholders, who were injured as a result of Fidelity's breach of duty.

24. As intended third-party beneficiaries of the Agreements, Plaintiff and the Plaintiff class may sue for breaches of the Agreements including breaches of the obligation of best execution.

## VI. CLASS ACTION ALLEGATIONS

25. Plaintiff restates the allegations of paragraphs 1- 23, above as though herein set forth in full.

26. Plaintiff brings this case as a class action pursuant to Federal Rules of Civil Procedure, Rules 23(a) and 23(b)(3).

27. Plaintiff requests that the Court certify a class of all persons who were clients of Fidelity or FMR as investment advisers, or investors in portfolios managed by Fidelity or FMR, at any time between May 1, 2002 and October 31, 2004, but that subsequently liquidated their investments and/or terminated their management agreements with Defendants prior to December 21, 2006 and whose investment portfolios entered into at least one transaction in which Fidelity and FMR used Jeffries as the execution broker. The class excludes Defendants, their directors, officers, employees, and affiliates.

7

## Rule 23(a)

28. The class is so numerous that joinder of all members is impracticable. More specifically, given the enormous size of Fidelity and FMR, and that they have clients nationwide, Plaintiff is informed and believes, and on that basis alleges, that the class includes thousands of members that are spread geographically throughout the United States.

29. There are questions of fact or law common to the class, including:

- Whether the Agreements imposed a "best execution" obligation;
- Whether Fidelity and FMR breached the Agreements; and
- Whether the class has been damaged by Defendants' conduct.

30. The claims or defenses of the representative party are typical of the claims or defenses of the class. There are no unique facts or circumstances applicable only to Plaintiff that are antagonistic to the interests of the rest of the class.

31. Plaintiff will fairly and adequately protect the interests of the class and has retained counsel competent and experienced in class action litigation.

## Rule 23(b)(3)

32. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members. Any differences in the amount of damages due individual class members is subject to a simple mathematical computation and will not predominate over the common issues of law and fact.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The following considerations support the superiority of the class action device:

    (a)    The class includes members that may have relatively small amounts of damages which would not justify their prosecution of separate actions;

    (b)    There does not appear to be any litigation concerning this controversy already commenced by members of the class;

    (©)    Concentrating this litigation in this forum is desirable because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district; and

    (d)    No difficulties will be encountered in managing these claims as a class action. The members of the class are readily definable and identifiable, and the prosecution of this class action will reduce the possibility of repetitious litigation.

## COUNT I
## BREACH OF CONTRACT

34. Plaintiff hereby restates the allegations of paragraphs 1-23, above, as though herein set forth in full.

35. Fidelity and FMR entered into the Agreements with Jeffries that imposed on them a contractual obligation to achieve "best execution" on transactions for investors like Plaintiff and the Plaintiff class.

36. Plaintiff and the Plaintiff class are intended third-party beneficiaries to the Agreements and are entitled to sue for breaches of the Agreements.

37. Fidelity and FMR breached their "best execution" obligations under the Agreements.

38. As a result of the breach, Plaintiff and the Plaintiff class were damaged by excess execution costs.

**WHEREFORE**, Plaintiff requests judgment against Defendants as follows:

A.  Certifying this action as a class action and appointing Plaintiff as class representative and his counsel as class counsel;

B.  Awarding Plaintiff and the Plaintiff class their damages caused by Defendants' conduct including pre-and post-judgment interest;

C.  Awarding Plaintiff and the Plaintiff class the costs and expenses of pursuing this action;

D.  Awarding attorney's fees to class counsel; and

E.  Granting Plaintiff and the Plaintiff class such other relief as the Court deems just and proper.

Dated:   September 5, 2007

Respectfully submitted,

By: /s/ Steven A. Katz
Steven A. Katz
Korein Tillery LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile