**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DAVID KURZ and RAYMOND HEINZL, on behalf of themselves and all others similarly situated, | Case No. 07-cv-709-JPG |
| Plaintiffs, | |
| v. | |
| FIDELITY MANAGEMENT & RESEARCH COMPANY and FMR CO., INC., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DISMISSAL
PURSUANT TO THE SECURITIES LITIGATION UNIFORM STANDARDS ACT**

BRYAN CAVE LLP
  Rebecca R. Jackson
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2750
(314) 259-2000
*Attorneys for Defendants Fidelity Management &
  Research Company and FMR Co., Inc.*

*Of Counsel*:

MILBANK TWEED HADLEY & McCLOY LLP
  Sean M. Murphy
  Robert R. Miller
  Andrew W. Robertson
  Elizabeth M. Virga
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF PLAINTIFFS' ALLEGATIONS ................................................. 2

ARGUMENT ............................................................................................................. 6

I.     PLAINTIFFS' ASSERTION OF BREACH OF CONTRACT CLAIMS IS THE
TYPE OF STRATEGIC PLEADING CONGRESS ENACTED SLUSA TO
ELIMINATE................................................................................................... 6

II.    PLAINTIFFS' BREACH OF CONTRACT CLAIMS SATISFY THE
STATUTORY CRITERIA FOR PRECLUSION UNDER SLUSA ................ 8

       A.    This Action Is a "Covered Class Action" Based on State Law ............................ 9

       B.    Plaintiffs' Claims Concern a "Covered Security" .................................. 9

       A.    The Complaint Alleges Fraud in Connection with the Purchase or Sale of
Covered Securities ............................................................................ 10

           1.    The Complaint Alleges Fraud ................................................ 10

           2.    The Alleged Fraud Is in Connection with the Purchase or Sale of
Securities............................................................................... 15

CONCLUSION.................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

<u>Araujo v. John Hancock Life Ins. Co.</u>,
    206 F. Supp. 2d 377 (E.D.N.Y. 2002) ................................................................... 12

<u>Beckett v. Mellon Investor Servs., LLC</u>,
    No. C06-5245 (FDB), 2006 WL 3249189 (W.D. Wash. Nov. 8, 2006)................ 12

<u>Behlen v. Merrill Lynch</u>,
    311 F.3d 1087 (11th Cir. 2002) ............................................................................. 8

<u>Benak v. Alliance Capital Mgmt., L.P.</u>,
    349 F. Supp. 2d 882 (D.N.J. 2004),
    <u>aff'd</u>, 435 F.3d 396 (3d Cir. 2006)....................................................................... 5

<u>Beneficial Nat'l Bank v. Anderson</u>,
    539 U.S. 1 (2003)................................................................................................ 10

<u>Bowlus v. Alexander & Alexander Servs., Inc.</u>,
    659 F. Supp. 914 (S.D.N.Y. 1987)...................................................................... 11

<u>Boyce v. AIM Mgmt. Group, Inc.</u>,
    No. H-04-2587, 2006 WL 4671324  (S.D. Tex. Sept. 29, 2006)......................... 16

<u>Broadhead Ltd. P'ship v. Goldman, Sachs & Co.</u>,
    No. 2:06CV009, 2007 WL 951623 (E.D. Tex. Mar. 26, 2007)........................... 12

<u>Caterpillar, Inc. v. Williams</u>,
    482 U.S. 386 (1987)............................................................................................ 10

<u>Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>,
    395 F.3d 25 (2d Cir. 2005).................................................................................. 11

<u>Dacey v. Morgan Stanley Dean Witter & Co.</u>,
    263 F. Supp. 2d 706 (S.D.N.Y. 2003).................................................................. 12

<u>Disher v. Citigroup Global Mkts., Inc.</u>,
    487 F. Supp. 2d 1009 (S.D. Ill. 2007).............................................................. 12, 13

<u>Dommert v. Raymond James Fin. Servs., Inc.</u>,
    No. 1:06-CV-102, 2007 WL 1018234 (E.D. Tex. Mar. 29, 2007) ...................... 12

<u>Dudek v. Prudential Sec., Inc.</u>,
    295 F.3d 875 (8th Cir. 2002) .................................................................... 8, 11, 12

<u>Felton v. Morgan Stanley Dean Witter & Co.</u>,
    429 F. Supp. 2d 684 (S.D.N.Y. 2006)............................................... 2, 12, 13, 14

<u>Frain v. Andy Frain, Inc.</u>,
    660 F. Supp. 97 (N.D. Ill. 1987) .......................................................................... 14

<u>Green v. Ameritrade, Inc.</u>,
    279 F.3d 590 (8th Cir. 2002) ............................................................................... 12

<u>Horattas v. Citigroup Fin. Mkts., Inc.</u>,
    No. 1:07-cv-122, 2007 WL 2702704  (W.D. Mich. Sept. 12, 2007)................. 9, 10, 17

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003)..................................................................................5

In re Mut. Funds Inv. Litig.,
   437 F. Supp. 2d 439 (D. Md. 2006) ...................................................................................18

In re Salomon Smith Barney Mut. Fund Fees Litig.,
   441 F. Supp. 2d 579 (S.D.N.Y. 2006)................................................................................12

Korsinsky v. Salomon Smith Barney Inc.,
   No. 01 Civ. 6085 (SWK), 2002 WL 27775 (S.D.N.Y. Jan. 10, 2002) ...............................12

Kutten v. Bank of Am., N.A.,
   Civ. No. 06-0937 (PAM), 2007 U.S. Dist. LEXIS 63897 (E.D. Mo. Aug. 29,
   2007) ...................................................................................................................................12

Lander v. Hartford Life & Annuity Ins. Co.,
   251 F.3d 101 (2d Cir. 2001)................................................................................................7

Merrell Dow Pharms., Inc. v. Thompson,
   478 U.S. 804  (1986)..........................................................................................................10

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,
   547 U.S. 71 (2006).......................................................................................................passim

Miller v. Nationwide Life Ins. Co.,
   391 F.3d 698 (5th Cir. 2004) .........................................................................................5, 12

Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,
   135 F.3d 266 (3d Cir. 1998)................................................................................................5

Potter v. Janus Inv. Fund,
   483 F. Supp. 2d 692 (S.D. Ill. 2007)............................................................................12, 14

Rabin v. J.P. Morgan Chase Bank, N.A.,
   No. 06 C 5452, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007)..............................................12

Rowinski v. Salomon Smith Barney, Inc.,
   398 F.3d 294 (3d Cir. 2005)..............................................................................................12

Salomon Smith Barney,
   441 F. Supp. 2d at 603-04 ..................................................................................................16

Shaw v. Charles Schwab & Co.,
   128 F. Supp. 2d 1270 (C.D. Cal. 2001) ............................................................................12

Siepel v. Bank of Am., N.A.,
   239 F.R.D. 558 (E.D. Mo. 2006) ......................................................................................12

Sofonia v. Principal Life Ins. Co.,
   465 F.3d 873 (8th Cir. 2006) .............................................................................................10

Spencer v. Wachovia Bank, N.A.,
   No. 05-81016, 2006 WL 3408043 (S.D. Fla. May 10, 2006)....................................9, 12, 16

Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   332 F.3d 116 (2d Cir. 2003)........................................................................................10, 11

Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,
   341 F. Supp. 2d 258 (S.D.N.Y. 2004)...............................................................................12

## STATUTES

15 U.S.C. § 77m ............................................................................................................ 5

15 U.S.C. § 77p(f)(2) .................................................................................................... 9

15 U.S.C. § 77r(b)(1) .................................................................................................. 10

15 U.S.C. § 77r(b)(2) .................................................................................................... 9

15 U.S.C. §§ 77b(a)(1) .................................................................................................. 2

15 U.S.C. §§ 77p(f)(3) .................................................................................................. 9

17 C.F.R. 240.10b-10 .................................................................................................... 5

28 U.S.C. § 1658(b) ...................................................................................................... 5

Pursuant to the Court's Memorandum and Order to Show Cause (the "Order"), dated October 30, 2007, Defendants Fidelity Management & Research Company and FMR Co., Inc. (collectively, "Defendants" or "Fidelity") respectfully submit this memorandum of law in support of dismissal of Plaintiffs' Complaint pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

## PRELIMINARY STATEMENT

The Court's Order correctly characterized Plaintiffs' claims as sounding in fraud, rather than contract, since those claims are based on allegations that Defendants engaged in an undisclosed and fraudulent "bribery scheme" that they knew was unlawful and contrary to their duties to Fidelity mutual fund shareholders.  Defendants write primarily to provide additional support for the Court's characterization of Plaintiffs' claims as sounding in fraud and to emphasize the lengths to which Plaintiffs have gone to disguise their allegations of fraud as claims for breach of contract.

Had Plaintiffs brought their claims under the federal securities laws, those claims would have been subject to immediate dismissal under the applicable statutes of limitations.  Moreover, the securities claims would have been subject to the strict pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA"), and discovery would have been automatically stayed until such time as Plaintiffs demonstrated that their claims meet those heightened pleading standards.  To get around these problems, Plaintiffs concocted a breach of contract theory based on the same allegations of an undisclosed and fraudulent "bribery scheme" that should have been brought as a claim for securities fraud.

Plaintiffs' attempt to contort their allegations of securities fraud into a claim for breach of contract is like fitting the proverbial square peg into the round hole.  Plaintiffs owned shares in Fidelity mutual funds, and as such, they were fund shareholders, not parties to any contract.  In

addition, the duty of "best execution" that Plaintiffs claim was violated is implied from federal securities law and state agency law as applied to broker-dealers, not from any contract. Moreover, the confirmation forms that serve as the basis for Plaintiffs' "contract" claim are not contracts at all.  Rather, these confirmation forms are federally regulated disclosure statements, which can take a number of forms in the case of institutional clients, and which do not require "best execution."  Tellingly, Plaintiffs have not attached any such forms to the Complaint.

Congress enacted SLUSA to prevent exactly this type of gamesmanship.  Class action claims for securities fraud must be litigated in federal court pursuant to federal law.  Congress made this determination, and Plaintiffs cannot circumvent it by dressing up their "securities fraud wolf . . . in a breach of contract sheep's clothing."  <u>Felton v. Morgan Stanley Dean Witter & Co.</u>, 429 F. Supp. 2d 684, 693 (S.D.N.Y. 2006).  Because this class action clearly alleges a fraud claim involving a "covered security," it is precluded by SLUSA, and dismissal is appropriate.

## STATEMENT OF PLAINTIFFS' ALLEGATIONS

Defendants are registered investment advisers who provide discretionary investment advisory services to mutual funds and other clients.[1]  (Compl. ¶¶ 5-6.)  Plaintiffs allege that they are former investors in Fidelity mutual funds.  (<u>Id.</u> ¶¶ 4, 24.)  They seek to represent a class of persons who were investors in Fidelity mutual funds at any time between May 1, 2002 and October 31, 2004, and who liquidated their investments before December 21, 2006 (the

---

[1]     Fidelity manages over three hundred proprietary (or Fidelity-branded) mutual funds. Each Fidelity mutual fund is structured as a corporation or a business trust and issues shares or trust units representing a pro rata ownership interest in the fund's assets.  The mutual fund shares and trust units are registered with the Securities and Exchange Commission (the "SEC") pursuant to the Investment Company Act of 1940 and are considered "securities" under the Securities Act of 1933 (the "Securities Act").  <u>See</u> 15 U.S.C. §§ 77b(a)(1), 77r(b)(2); <u>see also</u> Compl. ¶ 6.

"Proposed Class").[2]  (Id. ¶ 28.)  Plaintiffs allege that the Proposed Class includes thousands of

members.  (Id. ¶ 29.)

Plaintiffs allege that, in connection with providing investment advisory services to the

Fidelity mutual funds, Defendants purchase and sell portfolio securities on behalf of the funds

and that Defendants typically engage one or more brokers to execute each securities transaction

on behalf of the funds.  (Id. ¶ 8.)  Plaintiffs allege that, in doing so, Defendants are obligated to

seek "best execution."  (Id. ¶ 10.)  Plaintiffs define "best execution" as requiring Defendants "to

choose execution brokers on the basis of the most favorable practicable execution costs, taking

into consideration the size of each transaction, the number of transactions per year, the market

impact of the transaction, brokerage commissions, services provided by the broker, and other

considerations."  (Id.)  Plaintiffs allege that the obligation to obtain best execution has been

codified in the rules of securities industry self-regulatory organizations, including the National

Association of Securities Dealers (the "NASD") and the New York Stock Exchange (the

"NYSE").[3]  (Id. ¶ 13.)

---

[2]       Plaintiffs vaguely define the Proposed Class as consisting of "all persons who were
clients of Fidelity or FMR as investment advisers, or investors in portfolios managed by Fidelity
or FMR."  (Id. ¶ 28.)  It is unclear whether Plaintiffs developed this tortured definition in an
attempt to sweep into the Proposed Class persons who owned shares or beneficial interests in
Fidelity-managed investment products other than the Fidelity mutual funds.  For purposes of the
Court's consideration of SLUSA's preclusive effect, the precise scope of the Proposed Class is
irrelevant since SLUSA precludes Plaintiffs' state-law claims for the reasons stated herein
regardless whether those claims are asserted on behalf of investors in investment products other
than mutual funds.  It bears noting, however, that Plaintiffs Kurz and Heinzl themselves appear
to have invested only in Fidelity mutual funds during the Proposed Class period (see Affidavit of
Diane Brown) and, as shareholders, lack standing to assert claims belonging to the funds or
claims on behalf of investors in other types of investment products.

[3]       In July 2007, the NASD and the member regulation, enforcement, and arbitration
functions of the NYSE were consolidated to form the Financial Industry Regulatory Authority,
which now is the principal non-governmental regulator for securities firms doing business in the
United States.

Plaintiffs allege that, in selecting brokers to execute securities transactions on behalf of the Fidelity mutual funds, Defendants were not guided by these best execution obligations.  (<u>Id.</u> ¶ 18.)  Instead, according to the Complaint, Defendants <u>knowingly</u> violated these best execution obligations due to conflicts of interest and misconduct consisting of a "bribery scheme in which transactions were steered to brokers [based] on the amount and number of unlawful 'goodies' that the brokerage firms lavished on Fidelity and FMR securities' [sic] traders."  (<u>Id.</u>; <u>see also</u> <u>id.</u> ¶ 9 ("Defendants knew that the practice of accepting such 'gifts' in exchange for transaction execution business was improper and unlawful and contrary to their 'best execution' obligations.").)  Specifically, Plaintiffs allege that, beginning in 2002, the brokerage firm Jefferies & Co. ("Jefferies") "lavished a number of 'gifts' on Fidelity and FMR traders" and, in exchange for those gifts, Defendants engaged Jefferies to execute an increasing volume of securities transactions on behalf of the Fidelity mutual funds.  (<u>Id.</u> ¶¶ 19-21.)  Plaintiffs further allege that that they relied on Defendants' best execution obligations in deciding to invest in the Fidelity mutual funds and that Defendants failed to disclose the alleged conflicts of interest and misconduct in which they engaged.  (<u>Id.</u> ¶¶ 15, 22.)  In addition, Plaintiffs contend that Defendants' alleged failure to seek best execution when trading on behalf of the Fidelity mutual funds resulted in increased execution costs that were "ultimately borne" by Plaintiffs and other fund shareholders.  (<u>Id.</u> ¶¶ 22, 38.)

Although the obligation to seek best execution originates from principles of agency law, it has become the subject of extensive federal regulation, and courts have recognized that, in appropriate circumstances, shareholders can bring federal securities fraud claims based on the alleged breach of this duty.  <u>See, e.g.</u>, <u>Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.</u>,

135 F.3d 266 (3d Cir. 1998).  Plaintiffs, however, have not done so here.[4]  Instead, they contrived a far-fetched breach of contract theory.

Specifically, Plaintiffs allege that, by allegedly failing to seek best execution, Defendants breached the standard forms of confirmation (the "Confirmations") that were allegedly issued by Jefferies when Defendants submitted trade instructions on behalf of the Fidelity mutual funds. (See Compl. ¶¶ 35-37.)  Confirmations are disclosure statements required under Rule 10b-10 under the Securities Exchange Act[5] that securities brokers, such as Jefferies, must provide when effecting trades on behalf of customers.  Rule 10b-10 does not regulate securities pricing or broker compensation, but calls for the disclosure of certain aspects of covered transactions. Moreover, the form and method of disclosure is not fixed.  The Rule itself provides flexibility for certain transactions, and the SEC has granted relief to comply with the Rule's disclosure requirements in a number of situations with the agreement of institutional customers such as

---

[4]     In all likelihood, Plaintiffs' decision not to pursue claims under the federal securities laws derives from their recognition that any such claims would be barred by the applicable statutes of limitations.  The statutes of limitations are one year for claims under the Securities Act and two years for claims under the Securities Exchange Act of 1934 (the "Exchange Act"), and the limitations periods under both statutes begin to run from the time the plaintiff actually discovered or should have discovered the facts giving rise to his claim.  See 28 U.S.C. § 1658(b); 15 U.S.C. § 77m; see also, e.g., Miller v. Nationwide Life Ins. Co., 391 F.3d 698 (5th Cir. 2004); Benak v. Alliance Capital Mgmt., L.P., 349 F. Supp. 2d 882 (D.N.J. 2004), aff'd, 435 F.3d 396 (3d Cir. 2006); In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243 (S.D.N.Y. 2003).  Press reports of Defendants' alleged involvement in the receipt of gifts from various brokers began to appear at least as early as December 2004.  See, e.g., Susanne Craig et al., Fidelity Traders May Catch Heat from Gift Probe, Wall St. J., Dec. 10, 2004, at C1 (reporting that SEC and NASD regulators had named Fidelity and several of its employees as recipients of allegedly improper gifts from brokers, including many of the gifts identified in Plaintiffs' Complaint).  Accordingly, any federal securities law claims based on the fraudulent scheme alleged in the Complaint would have been time barred by the time Plaintiff Kurz first filed claims against Defendants in August 2007.

[5]     17 C.F.R. 240.10b-10.

those of the Fidelity mutual funds.[6]   Although the Confirmations are not required to incorporate

any standard of execution, Plaintiffs allege that they incorporate by reference NASD and NYSE

rules regarding best execution.  (See id. ¶¶ 12-14, 19.)  This purported "duty" would therefore

exist either with or without the alleged "contract."  Notably, Plaintiffs do not attach a

Confirmation to the Complaint, and they do not allege that they are parties to the Confirmations.

Instead, they argue that they are intended third-party beneficiaries of the Confirmations and,

therefore, are entitled to sue for breaches of their terms.[7]  (See id. ¶¶ 15-16.)

## ARGUMENT

### I.   PLAINTIFFS' ASSERTION OF BREACH OF CONTRACT CLAIMS IS THE TYPE OF STRATEGIC PLEADING CONGRESS ENACTED SLUSA TO ELIMINATE

After determining that meritless and abusive private lawsuits were harming the nation's

securities markets, Congress enacted the PSLRA in 1995 to impose various procedural and

substantive restrictions on private securities suits in federal court, including heightened pleading

requirements, more rigorous standards for class representation, and mandatory discovery stays

pending motions to dismiss.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S.

71, 81-82 (2006) ("Dabit II").  Seeking to avoid the PSLRA's restrictions, securities plaintiffs

began to cast their allegations of securities fraud as state-law causes of action and pursue relief in

---

[6]     See Rule 10b-10(b) (alternative periodic reporting of certain transactions); William Blair & Co. 2005 No-Act. LEXIS 614 (June 10, 2005) (discretionary accounts); Thomson Financial Services, Inc. 1993 No-Act. LEXIS 1241 (Oct. 8, 1993) (proprietary trading system for institutional clients); Depository Trust Company, 1992 No-Act. LEXIS 915 (Sept. 4, 1992) (intermediary trading platform).

[7]     In the event the Court determines not to dismiss Plaintiffs' breach of contract claims as precluded by SLUSA and, instead, remands the action to state court, Defendants anticipate filing a motion to dismiss the action based on numerous pleading deficiencies.  For example, Plaintiffs fail to allege the existence of a valid contract, they fail to adequately allege that they are intended third-party beneficiaries of any contract that may exist, and they fail to assert their claims derivatively on behalf of the Fidelity mutual funds.

state court.  See id. at 82.  Congress enacted SLUSA to end this "federal flight" phenomenon "by making federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law."  Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 108 (2d Cir. 2001); see also Dabit II, 547 U.S. at 82.  To this end, SLUSA precludes certain state-law claims and provides for removal to federal court of class actions asserting those claims.  See Dabit II, 547 U.S. at 82-83.

Predictably, in the nearly ten years since the statute was enacted, litigants have tested the limits of SLUSA's preclusion provisions, with plaintiffs attempting to artfully draft state-law claims to avoid preclusion under SLUSA.  Just last year, the Supreme Court issued its first decision addressing the scope of SLUSA's preclusion provisions, and in doing so, it emphasized that SLUSA should be interpreted broadly to accomplish Congress's purpose in enacting the statute.  See id. at 547 U.S. 78-86.  The Court noted that "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated," id. at 78, and it rejected a narrow interpretation of SLUSA that had been adopted by several Courts of Appeals because it "would undercut the effectiveness of the [PSLRA], and thus run contrary to SLUSA's stated purpose [of] prevent[ing] certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA]."  Id. at 86.

Plaintiffs' breach of contract claims are precisely the type of claims Congress enacted SLUSA to preclude.  Plaintiffs arguably could have brought relatively straightforward claims for fraud under the federal securities laws; however, any such claims would be time-barred since press reports of the alleged conduct outlined in the Complaint put Plaintiffs on notice of their claims well over two years ago.  Recognizing this, Plaintiffs and their counsel concocted a

strained and convoluted breach of contract theory in order to take advantage of the ten-year

statute of limitations for such claims under Illinois law.  This sort of procedural and jurisdictional

gamesmanship is precisely the conduct Congress sought to eliminate through SLUSA.

## II.    PLAINTIFFS' BREACH OF CONTRACT CLAIMS SATISFY THE STATUTORY CRITERIA FOR PRECLUSION UNDER SLUSA

SLUSA amended the Securities Act and the Exchange Act to preclude certain state-law

claims and to provide for the removal to federal court of class actions asserting those claims.

Dudek v. Prudential Sec., Inc., 295 F.3d 875, 877 (8th Cir. 2002); Behlen v. Merrill Lynch, 311

F.3d 1087, 1092 (11th Cir. 2002).  The statute provides, in pertinent part:

> No covered class action based upon the statutory or common law
> of any State or subdivision thereof may be maintained in any State
> or Federal court by any private party alleging –
>
> (1) an untrue statement or omission of a material fact in connection
>     with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or
>     deceptive device or contrivance in connection with the
>     purchase or sale of a covered security.
>
> *       *       *
>
> Any covered class action brought in any State court involving a
> covered security . . . shall be removable to the Federal district court
> for the district in which the action is pending[.]

15 U.S.C. § 77p(b), (c).[8]  Accordingly, SLUSA precludes and requires dismissal of claims that

satisfy four criteria:

> (1)    the claims are brought as part of a "covered class action," which the
>        statute defines to include, inter alia, class actions brought on behalf of
>        more than fifty persons, 15 U.S.C. § 77p(f)(2);
>
> (2)    the claims are based on state law;

---

[8]    SLUSA made identical amendments to the Securities Act and the Exchange Act.  For the
sake of simplicity, all citations are to the statutory amendments to the Securities Act.

(3)     the claims concern a "covered security," which the statute defines broadly to include, <u>inter alia</u>, mutual fund shares and all securities traded on national securities exchanges, 15 U.S.C. § 77r(b); and

(4)     the claims are based on allegations of "a misrepresentation or omission of material fact" or the use of "a manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b).

Plaintiffs' breach of contract claim satisfies each of the four criteria for preclusion under SLUSA.

### A.    This Action Is a "Covered Class Action" Based on State Law

This action is a "covered class action" under 15 U.S.C. § 77p(f)(2) because Plaintiffs purport to bring claims on behalf of a Proposed Class that includes thousands of members.  <u>See</u> <u>Horattas v. Citigroup Fin. Mkts., Inc.</u>, No. 1:07-cv-122, 2007 WL 2702704, at *4 (W.D. Mich. Sept. 12, 2007); <u>see also</u> Compl. ¶¶ 1, 27-33.  In addition, Plaintiffs' claims are based on state law because the only claim in the Complaint is for breach of contract under state law.  (<u>See</u> Compl. ¶¶ 1, 34-38.)

### B.    Plaintiffs' Claims Concern a "Covered Security"

Plaintiffs' claims concern a "covered security" under 15 U.S.C. §§ 77p(f)(3), 77r(b) for two independent reasons.  First, Plaintiffs' claims relate to Plaintiffs' ownership of Fidelity mutual fund shares.  <u>See</u> 15 U.S.C. § 77r(b)(2) (defining mutual fund shares to be "covered securities"); <u>Horattas</u>, No. 1:07-cv-122, 2007 WL 2702704, at *5; <u>Spencer v. Wachovia Bank, N.A.</u>, No. 05-81016, 2006 WL 3408043, at *3 (S.D. Fla. May 10, 2006); <u>see also</u> Compl. ¶ 6. Second, Plaintiffs' claims relate to Defendants' and Jefferies' purchases and sales of portfolio securities, including securities registered on national exchanges, on behalf of the Fidelity mutual

funds.[9]  See 15 U.S.C. § 77r(b)(1) (defining the term "covered security" to include any security

traded on national securities exchanges, including the NYSE); Sofonia v. Principal Life Ins. Co.,

465 F.3d 873, 877 (8th Cir. 2006); Horattas, No. 1:07-cv-122, 2007 WL 2702704, at *5.

> **A.    The Complaint Alleges Fraud in Connection with the Purchase or Sale of Covered Securities**

> **1.    The Complaint Alleges Fraud**

In determining whether the claims at issue are based on allegations of fraud for purposes

of SLUSA, the Court should examine the substance of the allegations in the Complaint and is not

bound by the labels affixed to the claims.  Ordinarily, under the "well pleaded complaint" rule,

the plaintiff is the "master of his complaint" and may avoid federal jurisdiction by asserting

exclusively state-law claims.  See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987);

Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 808 (1986).  However, an exception to

the well pleaded complaint rule exists where Congress has completely preempted the state-law

cause of action asserted by the plaintiff.  See, e.g., Beneficial Nat'l Bank v. Anderson, 539 U.S.

1, 8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a

claim which comes within the scope of that cause of action, even if pleaded in terms of state law,

is in reality based on federal law."); Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,

332 F.3d 116, 123 n.5 (2d Cir. 2003) (Complete preemption provides "an exception to the well-

pleaded complaint rule.  It trumps the well-accepted principle that the plaintiff is the 'master of

the claim' and may avoid removal to federal court by alleging only state-law claims.").  In such

circumstances, "a federal court may look behind the complaint to preclude a plaintiff from

---

[9]     The assets of each Fidelity mutual fund consist of a pool of capital collected from investors through their purchases of fund shares.  In its capacity as investment adviser to the funds, Fidelity invests each fund's assets in a portfolio of securities consisting of stocks, bonds, and/or other types of securities pursuant to investment guidelines stated in each fund's prospectus filed with the SEC.

defeating federal question jurisdiction through 'artful pleading,' that is, by disguising a federal claim as a claim arising under state law."  Bowlus v. Alexander & Alexander Servs., Inc., 659 F. Supp. 914, 918 (S.D.N.Y. 1987); see also Dudek, 295 F.3d at 879 ("[I]f Congress has completely preempted a particular area, plaintiff may not avoid federal question jurisdiction and the preemption of state-law claims by artfully concealing the federal question in an otherwise well pleaded complaint under state law.").

SLUSA creates a similar exception to the well pleaded complaint rule.  Although SLUSA technically does not preempt any state-law claims,[10] SLUSA's practical effect is the same as preemption because it precludes plaintiffs from pursuing certain types of state-law claims and requires those claims to be pursued under the federal securities laws.  See Spielman, 332 F.3d at 123 ("The clear and unambiguous language convinces us that SLUSA was intended to completely preempt the field of certain types of securities class actions by essentially converting a state-law claim in to a federal claim and creating federal jurisdiction and venue for specified types of state securities fraud claims.") (emphasis in original).

Accordingly, when determining whether SLUSA applies, courts "look beyond the face of the complaint to analyze the substance of the allegations made," Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 34 (2d Cir. 2005) ("Dabit I"), vacated in part on other grounds, 547 U.S. 71 (2006), and where those allegations involve misrepresentations, omissions, or other deceptive or manipulative conduct by the defendants, SLUSA applies even if the

---

[10]    As the Supreme Court explained in Dabit II:

> SLUSA does not actually pre-empt any state cause of action.  It simply denies plaintiffs the right to use the class action device to vindicate certain claims.  The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist.

547 U.S. at 87.

complaint does not explicitly assert a claim for fraud.  See Potter v. Janus Inv. Fund, 483 F.

Supp. 2d 692 (S.D. Ill. 2007) (Herndon, J.); Disher v. Citigroup Global Mkts., Inc., 487 F. Supp.

2d 1009 (S.D. Ill. 2007) (Murphy, J.); Felton v. Morgan Stanley Dean Witter & Co., 429 F.

Supp. 2d 684, 693 (S.D.N.Y. 2006).[11]

Judge Herndon recently applied these principles in Potter, 483 F. Supp. 2d 692, which

involved an action originally filed in Illinois state court by investors in Janus mutual funds.  The

plaintiffs alleged that Janus, in its capacity as the funds' investment adviser, was negligent and

breached its fiduciary duty by allowing certain arbitrageurs to engage in improper and abusive

trading practices to the detriment of other mutual fund shareholders.  Id. at 693-94.  After the

action was removed to federal court pursuant to SLUSA, plaintiffs moved to remand, arguing

that SLUSA did not apply because the complaint asserted claims for negligence and breach of

fiduciary duty, rather than fraud.  Judge Herndon rejected this argument, holding that "[b]ecause

the substance rather than the form of Plaintiffs' claims concerns material omissions in

connection with purchases or sales of covered securities, those claims are within the scope of

---

[11]     See also, e.g., Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294 (3d Cir. 2005);
Miller, 391 F.3d at 701-02; Dudek, 295 F.3d at 879-80; Kutten v. Bank of Am., N.A., No. 06-
0937 (PAM), 2007 U.S. Dist. LEXIS 63897 (E.D. Mo. Aug. 29, 2007); Rabin v. J.P. Morgan
Chase Bank, N.A., No. 06 C 5452, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007); Dommert v.
Raymond James Fin. Servs., Inc., No. 1:06-CV-102, 2007 WL 1018234 (E.D. Tex. Mar. 29,
2007); Broadhead Ltd. P'ship v. Goldman, Sachs & Co., No. 2:06CV009, 2007 WL 951623
(E.D. Tex. Mar. 26, 2007); Siepel v. Bank of Am., N.A., 239 F.R.D. 558 (E.D. Mo. 2006);
Beckett v. Mellon Investor Servs., LLC, No. C06-5245 (FDB), 2006 WL 3249189 (W.D. Wash.
Nov. 8, 2006); Spencer, No. 05-81016, 2006 WL 3408043; In re Salomon Smith Barney Mut.
Fund Fees Litig., 441 F. Supp. 2d 579 (S.D.N.Y. 2006); Dacey v. Morgan Stanley Dean Witter
& Co., 263 F. Supp. 2d 706 (S.D.N.Y. 2003); Araujo v. John Hancock Life Ins. Co., 206 F.
Supp. 2d 377 (E.D.N.Y. 2002); Korsinsky v. Salomon Smith Barney Inc., No. 01 Civ. 6085
(SWK), 2002 WL 27775 (S.D.N.Y. Jan. 10, 2002).

Although some contrary authority exists, most, if not all, such cases were decided before
the Supreme Court made clear in Dabit II that SLUSA's preclusions provisions are to be
interpreted broadly.  See Green v. Ameritrade, Inc., 279 F.3d 590 (8th Cir. 2002); Xpedior
Creditor Trust v. Credit Suisse First Boston (USA) Inc., 341 F. Supp. 2d 258 (S.D.N.Y. 2004);
Shaw v. Charles Schwab & Co., 128 F. Supp. 2d 1270 (C.D. Cal. 2001).

preclusion under SLUSA." Id. at 700.  The court explained that "[t]he fact that Plaintiffs have

chosen to disguise what amount to claims of securities fraud as claims for negligence and breach

of fiduciary duty under state law is not enough to evade preclusion of those claims under

SLUSA." Id. at 702[12]; see also Disher, 487 F. Supp. 2d at 1018 ("Where the factual predicate for

the claims [for breach of fiduciary duty and the duty of good faith and fair dealing] is alleged

misrepresentation or omission of material facts in connection with purchases or sales of covered

securities, the claims are precluded under SLUSA.").

      In addition, as this Court recognized in the Order, the Southern District of New York

recently applied the same analysis in dismissing an action based on allegations nearly identical to

the allegations in this case.  See Felton, 429 F. Supp. 2d 684.  In Felton, a class of investors who

had brokerage accounts with Morgan Stanley alleged that the firm breached its contracts with the

individual class members by failing to provide objective and unbiased research and

recommendations to the class members due to conflicts of interest arising from the firm's

investment banking relationships.  Id. at 687-89.  Just as Plaintiffs do here, the plaintiffs in

Felton alleged that two standard form contracts, executed upon the opening of their brokerage

accounts, incorporated by reference and imposed upon Morgan Stanley the rules and customs of

the NASD, the NYSE, and other self-regulatory organizations, including certain duties relating

to conflicts of interest and the provision of investment advice.  See id. at 687.  In considering

Morgan Stanley's motion to dismiss pursuant to SLUSA, the court looked beyond plaintiffs'

characterization of the claim as for breach of contract and analyzed the substance of plaintiffs'

allegations.  See id. at 692-93.  Because the complaint alleged that Morgan Stanley failed to

---

[12]     Despite finding that plaintiffs' claims were precluded under SLUSA, Judge Herndon
nonetheless remanded the action to state court because of certain procedural defects in the
removal proceedings.  See id. at 703-08.

disclose certain conflicts of interest and related misconduct, the court found that plaintiffs'

purported breach of contract claim was, in reality, a claim for fraud precluded by SLUSA:

> I conclude without difficulty that Plaintiffs' claim is a securities fraud
> wolf dressed up in a breach of contract sheep's clothing . . . .  Plaintiffs
> describe [the tainted research] as a breach by Morgan Stanley of the
> standardized contracts with the Plaintiffs and Class Members, and so it
> may have been, but it is also a quintessential example of a fraudulent
> omission of a material fact under the federal securities laws . . . .
> Stripped to its essentials, the Amended Complaint alleges that Morgan
> Stanley breached its contracts with Plaintiffs <u>by engaging in a
> fraudulent scheme</u>.

<u>Id.</u> at 693 (emphasis in original, internal quotations omitted).

Just as in <u>Potter</u> and <u>Felton</u>, SLUSA precludes Plaintiffs' breach of contract claim here

because it is based on allegations of an undisclosed "bribery scheme" involving conflicts of

interest and improper conduct.  Although Plaintiffs strenuously avoid using words such as

"fraud," "omit," or "misrepresent" to describe Defendants' conduct, allegations of fraud

permeate the Complaint.  Plaintiffs allege that Defendants faced conflicts of interest and engaged

in conduct that they knew was unlawful and contrary to the duties they owed to Plaintiffs.  (<u>See</u>

Compl. ¶¶ 18-21.)  Plaintiffs further allege that they were "unaware" of Defendants' scheme—an

allegation that can only be understood to mean that Defendants failed to disclose the scheme.

(<u>See</u> <u>id.</u> ¶ 22.)  Moreover, Plaintiffs allege that the undisclosed conflicts of interest and improper

conduct were material (<u>see</u> <u>id.</u> ¶¶ 9, 23), and they claim to have relied on Defendants' duty to

seek best execution in deciding to invest in Defendants' mutual funds.  (<u>See</u> <u>id.</u> ¶ 15.)  These

allegations track the basic elements of a claim for fraud.  <u>See, e.g.</u>, <u>Frain v. Andy Frain, Inc.</u>, 660

F. Supp. 97, 99-100 (N.D. Ill. 1987) ("The elements of proof for the securities law claim and the

common law fraud claim were therefore virtually identical; as to both plaintiff needed to prove

(1) defendants' omission of material fact, (2) with the intent to deceive, and (3) plaintiff's

reliance on the omission.").

That Plaintiffs have disclaimed any claim of fraud and, instead, cast the allegations as a claim for breach of contract is beside the point.  The substance of the allegations controls over the labels applied to them by Plaintiffs, and the essence of the Complaint is a knowing and fraudulent scheme consisting of undisclosed conflicts of interest and improper conduct.

### 2.   The Alleged Fraud Is in Connection with the Purchase or Sale of Securities

The Supreme Court's recent decision in <u>Dabit II</u> makes clear that SLUSA's requirement that allegations of fraud be "in connection with" the purchase or sale of securities should be read broadly to apply whenever the allegations "coincide" with a securities transaction.  <u>See</u> <u>Dabit II</u>, 547 U.S. at 85.  The plaintiff in <u>Dabit II</u> brought state-law claims on behalf of a class of investors who were induced to hold overvalued securities based on biased and misleading research reports prepared by Merrill Lynch analysts.  <u>Id.</u> at 75-76.  The Second Circuit held that, because the proposed class was defined to include only those investors who held, but did not purchase or sell, allegedly overvalued securities, their claims were not "in connection with" the purchase or sale of securities as required by SLUSA.  <u>Id.</u> at 77.  The Supreme Court rejected this argument, holding that, for purposes of SLUSA's "in connection with" requirement, "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else."  <u>Id.</u> at 85.  The Court explained that "[t]he requisite showing . . . is deception in connection with the purchase or sale of any security, not deception of an identifiable purchaser or seller."  <u>Id.</u>  The Court based its holding on case law interpreting the "in connection with" provisions of Section 10(b) and Rule 10b-5 of the Exchange Act, which Congress adopted in SLUSA.  <u>See id.</u>  In addition, the Court emphasized that this broad construction of SLUSA's "in connection with" requirement is necessary to ensure that the statute accomplishes its stated purpose of preventing securities fraud plaintiffs from circumventing the PSLRA by bringing state-law claims in state

court.  Id. at 86 ("The presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment.  A narrow reading of the statue would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose.").

Under Dabit II's broad reading of SLUSA's "in connection with" requirement, the allegations of fraud in the Complaint here are in connection with the purchase of sale of securities in at least two respects.  First, Plaintiffs' allegations of fraud are in connection with their own purchases of Fidelity mutual fund shares.  Plaintiffs allege that they relied on Defendants' duty to seek best execution in deciding to invest in Fidelity mutual funds, that Defendants knowingly failed to seek best execution when trading portfolio securities on behalf of the funds due to an undisclosed "bribery scheme," and that this alleged breach of duty caused Plaintiffs to suffer damages as fund shareholders.  (See Compl. ¶¶ 15, 18, 23, 38.)  These allegations clearly "coincide with" Plaintiffs' purchases of Fidelity mutual fund shares and therefore satisfy SLUSA's "in connection with" requirement.  See, e.g., Spencer, No. 05-81016, 2006 WL 3408043, at *7 (holding that SLUSA's "in connection with" requirement was satisfied where plaintiffs (a) alleged that defendants made misrepresentations about mutual fund investments and (b) sought damages suffered as fund shareholders); Boyce v. AIM Mgmt. Group, Inc., No. H-04-2587, 2006 WL 4671324, at *6 (S.D. Tex. Sept. 29, 2006) (holding that allegations that defendant investment advisers made improper marketing payments from mutual fund assets to broker-dealers were "in connection with" plaintiffs' purchases of mutual fund shares for purposes of SLUSA); Salomon Smith Barney, 441 F. Supp. 2d at 603-04 (same).

Second, Plaintiffs' allegations of fraud are in connection with Defendants' and Jefferies' purchases and sales of securities in the Fidelity mutual funds' underlying portfolios.  Plaintiffs

allege that Defendants improperly engaged Jefferies to execute portfolio securities transactions on behalf of the Fidelity mutual funds in exchange for gifts that Jefferies provided to Fidelity and FMR traders.  (See Compl. ¶¶ 18-22.)  Because the alleged fraudulent scheme necessarily involves purchases and sales of portfolio securities by Defendants and Jefferies, it is "in connection with" those purchases and sales of securities for purposes of SLUSA.  See Dabit II, 547 U.S. at 85 ("[I]t is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else.").

The recent decision in Horattas is on point.  Horattas, No. 1:07-cv-122, 2007 WL 2702704.  Plaintiffs in Horattas were individuals who purchased burial rights and burial plots at two cemeteries in Michigan.  Id. at *1.  State law required the cemeteries to deposit a percentage of the proceeds from each sale of burial rights into an endowment care fund to finance the maintenance of the burial plots and cemetery grounds.  Id.  The endowment care fund was established as a trust account at Citigroup and was invested in mutual funds and other securities. Id. at *2.  Plaintiffs alleged, however, that the cemeteries were sold in 2004 and, shortly thereafter, the new owner liquidated the endowment care fund and used the proceeds for improper purposes.  Id. at *1.  Plaintiffs brought claims for breach of fiduciary duty and conversion against the owner of the cemeteries and Citigroup.  Id. at *2.

Defendants moved to dismiss the claims as precluded by SLUSA, and plaintiffs opposed the motion, arguing that the alleged fraudulent scheme was not "in connection with" the purchase or sale of securities because they alleged neither that they purchased or sold any securities nor that they were deceived about the value of any securities.  Id. at *6-9.  The court rejected this argument, holding that Dabit II "compels the court to conclude that because the misrepresentation and deception alleged by Horattas 'coincided with' a series of covered-

security transactions in and from the cemetery defendants' Citigroup accounts the misconduct occurred 'in connection with' the purchase or sale of a covered security . . . ." Id. at *9; see also In re Mut. Funds Inv. Litig., 437 F. Supp. 2d 439, 443-44 (D. Md. 2006) (holding that SLUSA's "in connection with" requirement was satisfied where plaintiffs alleged that defendant insurance companies negligently invested variable annuity assets in mutual funds that had been mis-priced due to arbitrage trading activities); Dommert, No. 1:06-CV-102, 2007 WL 1018234, at *10-12 (holding that alleged omissions about the terms of an agreement for investment advisory services between plaintiff and defendant brokerage firm were "in connection with" the purchase or sale of securities because plaintiff "entered into the Agreement with Defendant and the chosen third party money manager so they could utilize her assets and expand upon those assets, presumably with the purchase and sale of securities").  Likewise, Plaintiffs' allegations of fraud here are "in connection with" the purchase or sale of covered securities for purposes of SLUSA because the fraudulent scheme alleged in the Complaint "coincides with" Defendants' and Jefferies' purchases and sales of portfolio securities on behalf of the Fidelity mutual funds.

## CONCLUSION

  For the foregoing reason, the Court should dismiss the Complaint in its entirety with prejudice because SLUSA precludes Plaintiffs' state-law claims for breach of contract.

Dated:  St. Louis, Missouri
        November 29, 2007

Respectfully submitted,

BRYAN CAVE LLP

By: /s/ Rebecca R. Jackson

   Rebecca R. Jackson LEAD COUNSEL
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2750
Phone:  (314) 259-2000
Fax:  (314) 259-2020
Email:  rrjackson@bryancave.com
*Attorneys for Defendants Fidelity Management &
   Research Company and FMR Co., Inc.*

*Of Counsel*:

MILBANK TWEED HADLEY & McCLOY LLP
   Sean M. Murphy
   Robert R. Miller
   Andrew W. Robertson
   Elizabeth M. Virga
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

19

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2007, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Steven A. Katz

Respectfully submitted,

/s/ Rebecca R. Jackson
Rebecca R. Jackson
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2750
Phone:  (314) 259-2000
Fax:  (314) 259-2020
E-mail:  rrjackson@bryancave.com

NY2:#4766105

20